[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 1, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-15722
Non-Argument Calendar

_____

BIA Nos. A95-226-831 & A95-226-832

WILLIAM BEDOYA,
PATRICIA MARTINEZ CASTRO,
MAURICIO BEDOYA MARTINEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review an Order of the
Board of Immigration Appeals

_____

**(August 1, 2005)**

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

William Bedoya, proceeding with counsel, petitions for review of the Board of Immigration Appeals' order affirming without opinion the Immigration Judge's denial of his application for asylum and withholding of removal.[1] After review, we deny Bedoya's petition for review.

## I. BACKGROUND

Bedoya, a native and citizen of Columbia, entered the United States as a non-immigrant visitor. Bedoya subsequently submitted an application for asylum, withholding of removal, and CAT relief,[2] alleging persecution on account of his political opinion and membership in a particular social group: the Liberal Party.[3] Essentially, Bedoya's application and testimony alleged that he was repeatedly

---

[1]Bedoya is the lead applicant for his wife, Patricia Martinez Castro, and their child, Mauricio Bedoya Martinez. For the sake of simplicity, and because his wife's and child's applications are dependant upon his, we refer only to Bedoya's application for asylum and withholding of removal.

[2]Bedoya does not raise any challenge in his brief to the IJ's denial of CAT relief. "When an appellant fails to offer argument on an issue, that issue is abandoned." Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

[3]An alien who arrives in or is present in the United States may apply for asylum. See 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A) (emphasis added). "The asylum applicant carries the burden of proving statutory 'refugee' status." D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004).

persecuted by the United Self-Defenses of Colombia ("AUC"), a paramilitary/terrorist group in Colombia.

The Immigration Judge ("IJ") denied Bedoya's application after finding Bedoya's testimony and supporting documentation lacked credibility. Specifically, Bedoya's asylum application indicated that he was persecuted on account of his participation in the Liberal Party. However, Bedoya's documentary evidence indicated that he was persecuted for his failure to pay a war tax to the AUC.

Furthermore, Bedoya testified that he had received threatening telephone calls from 1999 to 2001. However, the copy of the June 2001 complaint Bedoya submitted to the local prosecutor's office indicated that he had been receiving the threatening calls for only approximately 15 days.

In addition, the IJ discredited Bedoya's assertion that the AUC caused him to hit a tree during a car chase. In support of his assertion, Bedoya submitted a traffic ticket. However, Bedoya did not present any corroborating evidence that the AUC was involved in the incident. In fact, Bedoya testified that he did not report the AUC's alleged involvement in the traffic accident to the local police. Ultimately, the IJ found it unbelievable that Bedoya would have been issued a traffic ticket if he was being chased by the AUC at the time of the accident.

Additionally, the IJ discredited Bedoya's assertion that he received so many threatening telephone calls that he was forced to change his phone number. In so doing, the IJ noted that there was no evidence that Bedoya actually changed his telephone number. Rather, the documentary evidence indicated that Bedoya's family contacted the telephone company to obtain a code to authorize certain calls due to a billing irregularity.

Further, Bedoya submitted the death certificate of a close friend who he claims was killed by the AUC for his involvement in the Liberal Party. However, the IJ refused to draw any significance from the death certificate because it did not state a cause of death.[4]

Based on an adverse credibility determination, the IJ denied Bedoya's application for asylum and withholding of removal. The BIA summarily affirmed.

Bedoya petitions this Court for review.

## II. DISCUSSION

A.      Standard of Review

Because the BIA summarily affirmed the IJ's decision, we review the opinion of the IJ because it is the final determination of the agency. Al Najjar v.

---

[4]The IJ commented on other pieces of evidence reflecting on Bedoya's credibility, but they are of questionable relevance to Bedoya's petition and thus are not discussed further.

Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). As stated numerous times before, we review "the IJ's factual determinations under the substantial evidence test." Forgue v. United States Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Furthermore,

> [u]nder this highly deferential test, we affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Thus, we do not engage in a de novo review of factual findings by the IJ. Similarly, we cannot find, or consider, facts not raised in the administrative forum, nor can we reweigh the evidence from scratch.

Id. (quotations, citation, and alterations omitted). This Court has also concluded that "[a]s with other factual findings, credibility determinations likewise are reviewed under the substantial evidence test. That is, the trier of fact must determine credibility, and [we] may not substitute [our] judgment for that of the IJ with respect to credibility findings." Id. (quotations, citations, and alterations omitted).

B.     The IJ's Adverse Credibility Determination Regarding Bedoya

In this case, the IJ made very specific, cogent findings as to Bedoya's credibility. Furthermore, the IJ determined that the differences and inconsistences between Bedoya's application and testimony were material.

This Court has concluded that

5

the IJ must offer specific, cogent reasons for an adverse credibility finding. Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence. A credibility determination, like any fact finding, may not be overturned unless the record compels it.

Id. at 1287 (citations and quotations omitted).

The cumulative differences between Bedoya's asylum application, other documentary evidence, and testimony are such that it was reasonable for the IJ to conclude that Bedoya's testimony was not credible. See D-Muhumed, 388 F.3d at 819 ("[T]he IJ's extremely detailed adverse credibility determination alone may be sufficient to support the IJ's denial of [a petitioner's] petition."). Furthermore, Bedoya has not carried his burden in rebutting the IJ's adverse credibility finding.

Because we cannot substitute our judgment for that of the IJ, and because the IJ considered all the relevant evidence in the record in making her adverse credibility determination, we conclude that the IJ's denial of Bedoya's application for asylum and withholding of removal is supported by substantial evidence.

**PETITION DENIED.**